**DAYS INN MANAGEMENT COMPANY,**
Petitioner–Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,**
Respondent–Cross–Petitioner.

Nos. 1035, 1255, Dockets
90–4135, 90–4151.

United States Court of Appeals,
Second Circuit.

Argued Feb. 8, 1991.

Decided April 10, 1991.

Abner P. Slatt, New York City, and John R. Hunt, Atlanta, Ga. (Slatt and Lane, New York City, Stokes, Lazarus & Carmichael, Atlanta, Ga., of counsel), for petitioner-cross-respondent.

Karen L. Arndt, Washington, D.C. (Paul J. Spielberg, Deputy Asst. Gen. Counsel for the N.L.R.B., Jerry M. Hunter, General Counsel for the N.L.R.B., Aileen A. Armstrong, Deputy Associate General Counsel for the N.L.R.B., of counsel), for respondent-cross-petitioner.

Before LUMBARD, NEWMAN and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Days Inn Management Co., Inc. ("Days Inn" or "petitioner") petitions this Court for review of an order of the National Labor Relations Board ("Board" or "NLRB"). The Board found that Days Inn committed an unfair labor practice in violation of section 8(a)(1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1) (1988), by allowing its employee to cross names off a list of potential voters during the course of a representation election. Specifically, Days Inn argues that the Board erred by applying what amounts to a *per se* rule that striking a name from a "voter" list, while a representation election

is being conducted, gives employees the impression that their activities are being monitored unlawfully. According to Days Inn, the Board failed to consider the totality of the circumstances in the case. Days Inn does not, however, contest the portion of the Board's order finding that it violated section 8(a)(1) of the Act by informing an employee that if the union was elected, management would decrease salaries. In response, the General Counsel of the National Labor Relations Board ("General Counsel") cross-petitions for enforcement of the Board's order in its entirety.

For the reasons set forth below, we grant enforcement of the order in part and deny enforcement in part.

## BACKGROUND

On February 10, 1986, petitioner Days Inn opened a hotel in Bridgeport, Connecticut ("hotel"). Approximately ten months after the opening, Local 217, Hotel and Restaurant Employees and Bartenders Union, AFL–CIO ("union") requested that the Days Inn management recognize it as the bargaining agent of the hotel's service and maintenance employees. Days Inn refused to recognize the union as the employees' representative and, consequently, the union petitioned the National Labor Relations Board to conduct a representation election. Subsequently, in January 1987, the Board held a hearing and determined which employees would be eligible to vote if an election were conducted. Two days after this hearing, petitioner laid off eighteen employees, citing "low occupancy and lack of work" as reasons for their termination. *See* Joint Appendix ("Jt. App.") at 46.

On January 29, 1987, the Regional Director of the NLRB directed that an election be conducted. In addition to current employees, each of the eighteen employees that had been discharged in January 1987 was designated as an eligible voter. The election, which was slated for February 25, 1987, was to take place on the second floor of the hotel. This area of the hotel was ordinarily open only to employees and hotel guests.

On the date of the election, the hotel sales director, Beth Mazuroski, told another hotel employee, Sharon Sorgenti, a housekeeper, that if the union won the election, employees' salaries would be lowered to the minimum wage. Additionally, Mazuroski stated that she was going to vote against unionization.

At about the same time, Catherine Rogers, the hotel's general manager, phoned Nestor Diaz, the Board agent in charge of supervising the election, and sought permission to control access of terminated employees to the hotel during the election. This request was prompted by management's fear that at least one former employee, who reacted violently upon learning of his discharge, might pose a security threat upon entering the hotel to cast his ballot. *See* Jt.App. at 79. In response, Diaz suggested that a hotel representative could remain in the lobby for the specific purpose of escorting voters to the polling area on the second floor of the hotel. Thus, management provided the hotel's chief engineer, Sal Albani, with a list of former employees who were eligible voters and stationed him in the hotel lobby to direct them to the polling area.

Albani directed those former employees whom he recognized to the polling place without asking their names. As other former employees entered, Albani greeted them, asked their names, found their names on the list and then directed them to the polling place. After speaking with these former employees, he drew a line through their names on the list.

The union lost the election by a vote of 37 to 32. Shortly thereafter, the union filed objections with the Board as to the conduct of the election. After holding a hearing, an Administrative Law Judge ("ALJ") determined that Days Inn violated Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), by threatening that wages would be reduced if the union won the election. The ALJ also concluded that Albani's act of crossing names off a list did not, in itself, constitute an unfair labor practice. Specifically, the ALJ determined that "the employees could not reasonably

assume that their Union activities had been placed under surveillance" merely because Albani had drawn a line through names on a list. Jt.App. at 44. Moreover, the ALJ found that respondent's concern for security prompted it to station Albani in the lobby on the date of the election. Accordingly, the ALJ found that this "security measure" did not constitute an unfair labor practice. *See* Jt.App. at 43–44.

The NLRB affirmed the ALJ's conclusion that the petitioner's statements regarding minimum wages violated the Act, but rejected the ALJ's determination that the petitioner did not give the impression of surveillance on the date of the election. According to the NLRB, the act of crossing off potential voters' names was "objectionable conduct interfering with the election" and "had a reasonable tendency to interfere with, restrain, and coerce individuals affected in the exercise of their Section 7 rights." Jt.App. at 63. The Board set aside the election and, in addition, found that petitioner had violated Section 8(a)(1) of the Act. Days Inn then brought this petition for review. The Board filed a cross-petition for enforcement of the NLRB's order.

## DISCUSSION

### I. *The Election*

■ Section 8(a)(1) of the Act prohibits an employer from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of the rights guaranteed in section [7 of the Act]." 29 U.S.C. § 158(a)(1). On a *petition for review*, we may overturn the Board's decision that particular conduct constituted a Section 8(a)(1) violation only if such a conclusion is unsupported by substantial evidence. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 478, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *Sanchez v. NLRB,* 785 F.2d 409 (2d Cir.1986); *Local One, Amalgamated Lithographers of America v. NLRB,* 729 F.2d 172, 175 (2d Cir.1984). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305

U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *see Sanchez,* 785 F.2d at 413.

Based on Albani's conduct on the date of the election, the NLRB charged Days Inn with a Section 8(a)(1) violation. The Board determined that Days Inn's use of a list of former employees interfered with the election and created the impression of surveillance, which in turn "coerced individuals affected in the exercise of their Section 7 rights." Jt.App. at 63. In its opinion, the Board suggested that it is an unfair labor practice for an employer or a union to maintain a list of individuals who have voted in a representation election, if it leads an employee voting in the election to infer that his or her conduct is being monitored. More fundamentally, the Board found that "by openly maintaining a list of individuals who voted in the election, when the employees were shown to have known that the names of voters were being recorded, the Respondent engaged in objectionable conduct interfering with the election." Jt.App. at 63.

■ Petitioner challenges these conclusions, arguing that the Board ignored the limited purpose for which it used the list. First, it points out that Albani's sole reason for striking names from the list was to protect hotel security. Indeed, petitioner notes that it had sought and obtained approval from a Board representative to station Albani in the lobby on the date of the election. Second, petitioner stresses that Albani's list only contained the names of the eighteen former employees who were eligible to vote. In sum, petitioner argues that the Board erred by failing to consider Albani's conduct in connection with the record as a whole. We agree. Accordingly, we hold that use of a list containing names of eligible voters must be viewed in its context and may not be considered a *per se* violation of Section 8(a)(1).

■ It is well-settled that "[c]onduct which gives the impression of surveillance violates section 8(a)(1) if that conduct reasonably tends to interfere with, restrain, or coerce employees in the exercise of their Section 7 rights." *Hanlon & Wilson Co.*

*v. NLRB*, 738 F.2d 606, 613 (3d Cir.1984). *See NLRB v. Hasbro Indus., Inc.*, 672 F.2d 978, 987 (1st Cir.1982); *Russell Stover Candies, Inc. v. NLRB*, 551 F.2d 204, 206 (8th Cir.1977); *Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100, 104–05 & n. 7 (5th Cir.1963). Moreover, it is equally well-established that "[i]n the interest of ensuring free, non-coerced elections, the Board has set aside elections 'if employee voters know, or reasonably can infer, that their names are being recorded' on unauthorized lists." *Medical Center of Beaver County, Inc. v. NLRB*, 716 F.2d 995, 999 (3d Cir.1983) (quoting *Masonic Homes of California, Inc.*, 258 NLRB 41, 48 (1981)). In a number of cases, however, the Board has refused to set aside elections on the basis of "improper list-keeping" when it has determined that the existence of the list had a *de minimis* effect on the election. *See Robert's Tours, Inc.*, 244 NLRB 818, 824–25 (1979), *enforced*, 633 F.2d 223 (9th Cir. 1980); *see also NLRB v. South Mississippi Electric Power Ass'n*, 616 F.2d 837, 839 (5th Cir.1980); *NLRB v. Fenway Cambridge Motor Hotel*, 601 F.2d 33, 38 (1st Cir.1979). We believe that in this case the petitioner's list had little, if any, effect on potential voters.

Although Albani crossed names off a list when individuals arrived at the hotel to vote, he did not attempt to hinder employees in the exercise of their right to cast a ballot in the representation election. By striking names off the list, Albani was attempting to ensure that only those individuals with a right to be in the hotel would be permitted to go to the second floor.

It is undeniable that in certain situations, *i.e.*, when there has been a long history of anti-union animus, Albani's acts, viewed in connection with other activity, could constitute an unfair labor practice. We find, however, that in this case there is insubstantial evidence to support the Board's conclusions that petitioner interfered with the election and that petitioner's actions would have "coerced" a reasonable employee. Albani had limited contact with the potential voters, and testimony before the ALJ revealed that few employees noticed him. Moreover, Albani did not make any suggestive remarks or treat the entering voters with disrespect. He merely asked their names and crossed off the names of those he did not know as they arrived. In addition, it seems clear that Albani made no pretense about what the list was for or what he was doing in the lobby. Furthermore, before the petitioner posted Albani in the lobby, it explicitly requested permission to do so from Nestor Diaz, the Board representative in charge of conducting the election. Although it is unclear whether the petitioner informed Diaz that it intended to furnish its representative with a list of voters, Diaz should have concluded that petitioner would take some measure to determine whether an individual was entitled to access to the second floor. Therefore, we find that the Board's determination that petitioner's conduct during the course of the election constituted a Section 8(a)(1) violation is not supported by substantial evidence.

## II. *Reduction of Wages*

Days Inn does not challenge the Board's finding that it committed an unfair labor practice by informing at least one worker that a union victory in the representation election would result in wage reductions. Petitioner's failure to contest the Board's holding on this point constitutes a waiver. *See NLRB v. Nevis Indus., Inc.*, 647 F.2d 905, 908 (9th Cir.1981); *see also NLRB v. Sheet Metal Workers' Int'l Ass'n, Local 16*, 873 F.2d 236, 237 (9th Cir.1989). Nevertheless, because "an enforcement order originates with this court [and] not the Board," *NLRB v. Semco Printing Center, Inc.*, 721 F.2d 886, 893 n. 4 (2d Cir.1983), we must give at least "minimal review to the Board's determination in light of the record." *Id.* It is undisputed that Beth Mazuroski, the hotel sales manager, told one of the employees that if the union was certified, management would reduce wages. Clearly this statement was intended to coerce the employee in the exercise of her right to engage in concerted activity. Consequently, we find that enforcement of this portion of the Board's opinion is warranted.

## CONCLUSION

Based on the foregoing, we grant Days Inn's petition to set aside the portion of the Board's order holding that Days Inn impermissibly gave voters the impression of surveillance during the election and we decline to enforce those portions of the order concerning surveillance and requiring a new election. Additionally, we grant enforcement as to the portion of the order finding that Mazuroski's actions constituted an unfair labor practice. We remand this case to the Board for further proceedings consistent with this opinion.